**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 18, 2022[*]
Decided February 22, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-3511

| | |
|---|---|
| KRISHAWN BROWN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 18-cv-483-bbc |
| KATHY CASCADDEN, *Defendant-Appellee*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

Krishawn Brown, a Wisconsin prisoner, contends that after he wrongly told an officer dispensing medicine that his name was on a package of pills, the officer gave him the pills recklessly. In this suit under 42 U.S.C. § 1983, the district court granted the

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

officer's motion for summary judgment. It correctly ruled that no jury could find that the officer was deliberately indifferent to Brown; we therefore affirm the judgment.

We present the facts in the light most favorable to Brown. *See Hackett v. City of South Bend*, 956 F.3d 504, 506 (7th Cir. 2020). One evening Brown came to the prison's medicine dispensary to receive his nightly acetaminophen. Kathy Cascadden, the officer dispensing medicine, showed Brown a package of pills and allowed him to verify that the name on the package was his. Brown, looking quickly at the name and unable to see it clearly, could discern only that the last name started with "Bro." Nonetheless, he told Cascadden that the medicine was his. Cascadden gave him pills from the package, and he swallowed them. Brown tells us that he did not take time to read the full name because he wanted to leave quickly after Cascadden offended him with a comment on his winter coat. He had drawn his arms inside his coat sleeves for warmth, and Cascadden had ordered him to wear the coat "properly."

As Brown left the dispensary, he thought that he had taken the wrong drug. Cascadden had shown him a mostly empty blister pack, and his acetaminophen pack should have been full. He now believes that he took a psychiatric drug intended for another inmate with a similar name. (Cascadden maintains that she gave Brown his acetaminophen, but at summary judgment we accept Brown's version.) That night, he became lightheaded and experienced diarrhea. He sought medical care the next morning and reported feeling anxious; nursing staff found nothing else amiss. Later that day, Brown became lightheaded while playing basketball and fell down, injuring his foot and finger.

Brown sued Cascadden under § 1983, alleging that she violated his Eighth Amendment rights by recklessly giving him the wrong medication while distracted by his coat. (He named other defendants as well, but the court dismissed them at screening, *see* 28 U.S.C. § 1915A, and he does not contest that ruling on appeal.) After Cascadden moved for summary judgment, Brown relied on news reports and other suits alleging medication errors to suggest that Cascadden knew of the risk of error and should have been more careful when handing out pills. He also raised a new claim, contending that inmates often receive incorrect medicine because of a policy of Wisconsin's Department of Corrections that allows officers without medical training to dispense prescription drugs. He argued that this policy is unconstitutional.

The district court entered summary judgment for the defendants. It concluded that Brown presented no evidence that, after he said his name was on the package of pills, Cascadden knowingly or recklessly gave him the wrong medicine, or that the side

effects created a substantial risk of serious harm. The court also refused to allow Brown to raise a new claim attacking the state's policy of allowing officers to dispense drugs, because his complaint mentioned only the single incident with Cascadden.

Brown argues on appeal that the court should have considered the reports alleging frequent mistakes in dispensing medicine as evidence that Cascadden was deliberately indifferent to Brown's health. In his view, these reports must have informed Cascadden of a significant risk of error, and so she should have focused more on accurately dispensing the drugs and less on his coat. He adds that her recklessness is corroborated by evidence that she violated a policy requiring her signature on his medical record after dispensing drugs and by her refusal to admit the mistake.

Summary judgment was proper because no jury could conclude that Cascadden recklessly handed Brown the wrong medication. We will assume for purposes of this appeal that she gave him the wrong medicine. To get past summary judgment on an Eighth Amendment claim of deliberate indifference to his health, Brown must furnish evidence reasonably suggesting that Cascadden knew of a serious risk of harm and consciously disregarded it. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994). Even if we assume that Cascadden knew about allegations of other dispensing errors, Brown has not supplied evidence that she consciously ignored a risk of harm to Brown. To the contrary, it is undisputed that Cascadden showed the package to Brown before giving it to him; she allowed him to confirm that his name was on it; he affirmed that the medicine was his; and only after receiving this confirmation did she release the pills to him. Brown offers no evidence that Cascadden knew that he misled her and did not see his full name on the package. Furthermore, nothing suggests that she would have recognized the mistake if she had signed her name on his medical record. Finally, we need not decide whether, in an exercise of due care, Cascadden should have doubted Brown's assertion that the package bore his name and read the name herself. The Eighth Amendment prohibits deliberate indifference, not negligence. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018). Once Brown confirmed that the package bore his name, and Cascadden had no reason to think that Brown was mistaken, Cascadden did not show deliberate indifference by believing him.

Brown next argues that the court should have allowed him to raise, at the summary-judgment stage, a new claim that the state's policy of allowing officers without medical training to dispense drugs was unconstitutional. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). But the court reasonably refused to allow the claim. We will put to the side the fact that the policy did not cause Cascadden to violate

Brown's rights. *See Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014). The problem that the district court rightly identified is that Brown's operative complaint named no policymakers as defendants and mentioned only the single error by Cascadden. The new claim thus rested on a different factual basis and, to be successful, would have required adding new defendants. District courts may reject an argument raised in summary-judgment briefing that would effectively expand the complaint in this way. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). The district court reasonably did so here to avoid undue expense and delay in resolving the case. *Id.* at 861. (We observe that the constitutionality of the policy was raised and litigated in at least one other case. *See Flynn v. Doyle*, 630 F. Supp. 2d 987, 992 (E.D. Wis. 2009) (class action).)

We have considered Brown's other arguments, and none has merit.

AFFIRMED